# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: December 29, 2021

```
* * * * * * * * * * * * *
TIMOTHY KRUSEMARK,              *     No. 16-1593V
                                *
        Petitioner,             *     Special Master Sanders
                                *
v.                              *     Attorneys' Fees and Costs;
                                *     Reasonable Basis
SECRETARY OF HEALTH             *
AND HUMAN SERVICES,             *
                                *
        Respondent.             *
* * * * * * * * * * * * *
```

*David C. Richards*, Christensen & Jensen, P.C., Salt Lake City, UT, for Petitioner.
*Adriana R. Teitel*, United States Department of Justice, Washington, DC, for Respondent.

**DECISION AWARDING ATTORNEYS' FEES AND COSTS**[1]

On November 30, 2016, Timothy Krusemark ("Petitioner") filed a petition seeking compensation under the National Vaccine Injury Compensation Program. 42 U.S.C. § 300aa–10 to 34 (2012)[2] (the "Vaccine Act" or "Program"). Pet., ECF No. 1. Petitioner alleged that he suffered from Chronic Inflammatory Demyelinating Polyneuropathy ("CIDP")[3] as a result of a

---

[1] This Decision shall be posted on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)). **This means the Decision will be available to anyone with access to the Internet.** As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Further, consistent with the rule requirement, a motion for redaction must include a proposed redacted decision. If, upon review, the undersigned agrees that the identified material fits within the requirements of that provision, such material will be withheld from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99–660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

[3] CIDP is "a slowly progressive autoimmune type of demyelinating polyneuropathy characterized by progressive weakness and impaired sensory function in the limbs and enlargement of the peripheral nerves, usually with elevated protein in the cerebrospinal fluid . . . Presenting symptoms often include tingling or numbness of the digits, weakness of the limbs, hyporeflexia or areflexia, fatigue, and abnormal sensations." *Chronic Inflammatory Demyelinating Polyneuropathy*, DORLAND'S MEDICAL DICTIONARY ONLINE [hereinafter "DORLAND'S"], https://www.dorlandsonline.com (last visited Nov. 18, 2021). It is related to Guillain-Barré Syndrome ("GBS"), which is "rapidly progressive ascending motor neuron

tetanus-diphtheria-acellular pertussis ("Tdap") vaccine administered on December 20, 2013. *See id.* ¶¶ 1, 7–8. After Petitioner submitted medical records and Respondent filed his Rule 4(c) report, Petitioner's previous counsel, citing irreconcilable differences, withdrew from this case. ECF Nos. 35, 46. Attorney David Richards began representing Petitioner, but Petitioner was unable to obtain an expert report. *See* Pet'r's Mot. to Dismiss ¶¶ 23–34, ECF No. 72. Petitioner filed a motion to dismiss his case, and I issued a decision granting Petitioner's motion. *Id.*; Dismissal Decision, ECF No. 73.[4]

Although Petitioner did not receive compensation, he requested an award of attorneys' fees and costs as permitted by the Vaccine Act. § 15(e). Respondent contested the appropriateness of any fees award, arguing that "[P]etitioner has not established a reasonable basis exists for his claim." Resp't's Resp. at 10, ECF No. 79.

For the reasons stated below, Petitioner's motion for attorneys' fees and costs is hereby **GRANTED**.

I.   **Procedural History**

Petitioner filed his petition for compensation on November 30, 2016. Pet., ECF No. 1. This case was reassigned to me on January 13, 2017. ECF No. 7. Petitioner submitted various medical records between January 13, 2017 and July 12, 2017, as well as a final statement of completion on the latter date. Pet'r's Exs. 1–15, ECF Nos. 9, 12, 15, 17, 19, 24, 26–27; ECF No. 28.

On October 12, 2017, Respondent filed his Rule 4(c) report. Resp't's Report, ECF No. 33. Respondent argued that Petitioner's claim should be dismissed because "[P]etitioner has not addressed the lengthy gap between his December 20, 2013 Tdap vaccination and onset of his CIDP." *Id.* at 8. Respondent noted that statements Petitioner made when he was diagnosed with CIDP indicate that Petitioner's CIDP arose eleven months post vaccination. *Id.* at 8 n.5.

On November 3, 2017, Petitioner's counsel, citing "irreconcilable differences[,]" filed a motion to withdraw. ECF No. 35 at 1. I stayed the motion to withdraw and ordered Petitioner to file a motion to substitute counsel by December 6, 2017. Order, ECF No. 36. Petitioner also filed a motion for interim attorneys' fees and costs on November 3, 2017. ECF No. 34. In his response, Respondent contested Petitioner's interim fees application, arguing that this claim lacked reasonable basis and that interim fees were not warranted. ECF No. 37 at 2. Regarding reasonable basis, Respondent stated that "the filed medical records place onset of [P]etitioner's CIDP approximately eleven months after his Tdap vaccination, a timeframe that far exceeds that which can be considered medically reasonable for a demyelinating condition." *Id.* at 5. Respondent continued that "Petitioner has not filed an expert report explaining how his CIDP could have been caused by his December 20, 2013 Tdap vaccination. Therefore, the current case record fails to

---

paralysis of unknown etiology, frequently seen after an enteric or respiratory infection . . . It begins with paresthesias of the feet, followed by flaccid paralysis of the entire lower limbs, ascending to the trunk, upper limbs, and face[.]" *Id.*; *Guillain-Barré Syndrome*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 18, 2021).
[4] *Krusemark v. Sec'y of Health & Hum. Servs.*, No. 16-1593V, 2020 WL 4049705 (Fed. Cl. Spec. Mstr. Mar. 30, 2020).

establish that a reasonable basis exists for [P]etitioner's claim." *Id.* Petitioner filed a reply to Respondent's response on December 6, 2017. Pet'r's Reply, ECF No. 40.

I again ordered Petitioner to file a motion to substitute counsel on December 28, 2017, and January 11, 2018. Scheduling Order, ECF No. 41; Scheduling Order, docketed Jan. 11, 2018. When Petitioner still did not file a motion to substitute counsel, I ordered Petitioner to file an affidavit attesting to his understanding of his responsibilities until he retained substitute counsel. Order, ECF No. 44. Petitioner filed his affidavit on March 14, 2018. Pet'r's Ex. 16, ECF No. 45-2. I granted Petitioner's counsel's motion to withdraw on March 26, 2018. ECF No. 46.

I issued a decision granting Petitioner's motion for interim attorneys' fees and costs on August 21, 2018. Interim Fees Decision, ECF No. 49. Regarding Respondent's reasonable basis objection, I noted that "[i]t is well settled that a medical expert's report is not a necessary condition to find reasonable basis for a filed claim." *Id.* at 8. I explained that expecting attorneys to procure expert opinions at the time of filing would cause "the cost of the [P]rogram [to] rise exponentially to pay out expert fees in cases that would have otherwise settled or been dismissed prior to expert procurement." *Id.* I stated that such an expectation would run counter to the purpose of the Program. *Id.* I continued that "[w]hile an expert report would certainly provide compelling evidence of reasonable basis, the lack of one is not [] grounds for denial of Petitioner's fee request here." *Id.*

I also addressed Respondent's assertion that the onset of Petitioner's CIDP was eleven months post vaccination and, thus, could not be plausibly linked with his vaccination. I determined that "[t]he [o]nset [o]f Petitioner's [s]ymptoms [i]s [n]ot [c]learly [e]leven [m]onths [p]ost[ v]accination[.]" *Id.* I discussed various symptoms in Petitioner's medical records, spanning from prior to Petitioner's vaccination to post vaccination but pre CIDP diagnosis. *Id.* I stated that "[a]lthough some or all of these symptoms may not seem related to Petitioner's ultimate diagnosis of CIDP, it is not immediately clear that all of Petitioner's symptoms can be neatly separated into injuries that resulted from discrete causes." *Id.* I noted, for instance, that "Petitioner's affidavit[5] describes radiating leg pain in February of 2014; weakness, myalgia, and paresthesia[6] one month later; and severe pain continuing throughout the rest of the year." *Id.* I noted that "Respondent did not dispute that these symptoms appear in the record, nor does he provide any argument that they should not be considered in this analysis[]" and that "Petitioner's ultimate diagnosis of CIDP, a neurological injury, coupled with his documented symptoms presented a series of facts that Petitioner's counsel initially interpreted as a viable vaccine claim." *Id.* Quoting the Court of Federal Claims, I stated that "Congress would not have intended to discourage counsel from representing petitioners who, because of the difficulty of distinguishing between the initial symptoms of a vaccine-related injury and unrelated malady . . . may [nevertheless] have good-faith claims with reasonable basis." *Id.* (quoting *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 285 (2014)). I concluded that "Petitioner ha[d] established that there was a reasonable basis for the filing of his claim[]" when "[c]onsidering the totality of the circumstances[.]" *Id.* I

---

[5] Petitioner's affidavit is referred to in error. Petitioner did not file an affidavit regarding his injury. Instead, Petitioner discussed his injury and symptoms in his petition. *See* Pet.

[6] Paresthesia is an "abnormal touch sensation, such as burning, prickling, or formication, often in the absence of an external stimulus." *Paresthesia*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 3, 2021).

awarded interim attorneys' fees and costs totaling $19, 601.02. *Id.* at 9. The parties filed a joint notice of decision not to seek review on September 13, 2018.[7] ECF No. 52.

On September 5, 2018, I held a status conference with the parties at which Petitioner appeared *pro se.* Order, ECF No. 51. Petitioner indicated that he was searching for counsel and "asked if he could submit additional filings to clarify the record." *Id.* I ordered Petitioner to file a motion to substitute counsel, additional filings, and/or a status report requesting a status conference by October 5, 2018. *Id.* Petitioner missed his deadline. *See* Informal Comms., docketed Oct. 19, 2018 and Oct. 31, 2018. On November 16, 2018, Petitioner moved for an extension of time "in order to secure an affidavit from a doctor that provided care, file additional records and obtain counsel." ECF No. 54. I granted Petitioner's motion. Order, ECF No. 55. After Petitioner missed his deadline, I ordered him to file a motion to substitute counsel or "a statement of completion indicating that he has filed all the relevant and referenced medical records needed to prove his claim[]" by February 15, 2019. Order at 2, ECF No. 56. Petitioner indicated that he may have found an attorney but requested additional time, and I granted Petitioner's request on February 26, 2019. Informal Comm., docketed Feb. 19, 2019; Order, ECF No. 57. On April 1, 2019, Petitioner filed a consented motion to substitute David C. Richards as Petitioner's attorney of record. ECF No. 62.

On April 10, 2019, I ordered Petitioner to submit an expert report addressing the onset issue by June 10, 2019. ECF No. 64. Petitioner filed a motion for an extension of time on June 4, 2019. ECF No. 65. Petitioner stated that he had obtained additional medical records and needed more time to file an expert report. *Id.* I granted Petitioner's motion and ordered him to file his updated medical records. Order, ECF No. 66. Petitioner filed his updated medical records and a statement of completion on June 14, 2019. Pet'r's Exs. 17–20, ECF No. 67; ECF No. 68.

On August 7, 2019, Petitioner filed a second extension for extension of time to file an expert report. ECF No. 69. Petitioner noted that he was working to obtain additional medical records. *Id.* I granted Petitioner's motion in part and ordered him to file an expert report by September 9, 2019. Order, ECF No. 70. Petitioner filed additional medical records on August 26, 2019. Pet'r's Exs. 21–23, ECF No. 71.

On September 9, 2019, Petitioner filed a motion to dismiss his case. Pet'r's Mot. to Dismiss, ECF No. 72. Petitioner detailed his attempts to obtain an expert report, including that two potential experts, Dr. Marcel Kinsbourne and Petitioner's treating physician, Dr. Kevin Kristl, declined to provide expert reports between August 16, 2019 and August 26, 2019. *Id.* ¶¶ 31–33. Petitioner indicated that previously, on August 12, 2019, Dr. Kristl communicated to Petitioner personally that he would be willing to testify or provide a report before he eventually refused. *Id.* ¶ 29. Petitioner stated that in light of these refusals and Dr. Kinsbourne's review of the record, "it would be unreasonable and would waste resources to continue this matter." *Id.* ¶ 34. I dismissed this case on March 30, 2020. Dismissal Decision, ECF No. 73.

---

[7] "The Special Master's grant or denial of interim attorneys' fees is a decision on compensation and as such it is reviewable by the Court of Federal Claims under § 12(e)." *Shaw v. Sec'y of Health & Hum. Servs.*, 609 F.3d 1372, 1376 (Fed. Cir. 2010).

4

On October 27, 2020, Petitioner filed a final motion for attorneys' fees and costs. Pet'r's Mot., ECF No. 76. Petitioner filed a supplement to his motion on October 29, 2020. ECF No. 77. Respondent filed his response, contesting reasonable basis during Mr. Richards's representation, on December 1, 2020. Resp't's Resp., ECF No. 79. Petitioner filed a reply on December 8, 2020. Pet'r's Reply, ECF No. 80. This matter is now ripe for consideration.

## II.     Relevant Medical History

Petitioner's pre-vaccination history is notable for chiropractic therapy for left wrist, back, and neck pain, as well as pain from a slip and fall incident on April 19, 2011. Pet'r's Ex. 4 at 98, 174, ECF No. 9-5. On September 18, 2013, Petitioner reported pain since January 24, 2013, in "the right sacral region[8] at the sacro-iliac[9] area, cervical[10] region at the mid-cervical area and thoracic[11] region at the mid back area." *Id.* at 10. Petitioner described his pain as "sharp and stabbing[]" and "as radiating down the upper leg on the right." *Id.* On evaluation, the chiropractor found that "[t]he sacral region at the sacro-iliac area had mild to moderate myofascial pain[12] and tenderness and has improved since the last assessment[, t]he cervical region at the mid-cervical area had mild to moderate hypertonicity[13] and has improved since the last assessment[, and t]he lumbar region at the lower back area had mild to moderate hypertonicity and has improved since the last assessment." *Id.* at 11. On November 11, 2013, approximately five weeks pre vaccination, Petitioner presented to the emergency room with back pain. Pet'r's Ex. 6 at 601, ECF No. 12-2. Petitioner reported that he had had chronic back pain for eighteen years but that his pain began to "feel[] different for the past [three]-[four] weeks." *Id.* at 601, 604. Petitioner also stated that he had suffered from joint problems "for many years" and that he had pain "radiating down his leg." *Id.* at 604.

Petitioner received the Tdap vaccine at issue on December 20, 2013. Pet'r's Ex. 1 at 1, ECF No. 9-2. On February 10, 2014,[14] Petitioner complained to his chiropractor of pain in the left

---

[8] The sacral region is "the region of the back overlying the sacrum[,]" which is "the triangular bone just below the lumbar vertebrae[.]" *Regio Sacralis*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 18, 2021); *Sacrum*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 18, 2021).

[9] Sacroiliac "pertain[s] to the sacrum and ilium; denoting the joint or articulation between the sacrum and ilium and the ligaments associated therewith." *Sacroiliac*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 18, 2021). The iliac is "the expansive superior portion of the coxal[, or hip,] bone." *Ilium*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 18, 2021); *Os Coxae*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 18, 2021).

[10] Cervical "pertain[s] to the neck." *Cervical*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 18, 2021).

[11] Thoracic "pertain[s] to or affect[s] the thorax (chest)." *Thoracic*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 18, 2021).

[12] Myofascial pain is "pain attributed to trigger points in muscles and their facia . . . ." *Myofascial Pain*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 18, 2021).

[13] Hypertonia is "excessive tone of the skeletal muscles, so that they have increased resistance to passive stretching and reflexes are often exaggerated; this usually indicates upper motor neuron injury." *Hypertonia*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 18, 2021).

[14] In his petition, Petitioner stated that "[b]y early February[] 2014, Petitioner had begun to experience dull and aching back pain and pain that radiated throughout his right leg, below the knee. He was treated

5

sacral region of the sacro-iliac area that began one week prior, on February 3, 2014, that "involved a lifting injury." Pet'r's Ex. 4 at 5. Petitioner described his pain as "dull and aching[]" and "as radiating down the leg below-the-knee[] on the right." *Id.* Petitioner reported that his "symptoms were aggravated by activities involving walking, sitting and bending." *Id.* Petitioner also reported back pain. *Id.* Following an evaluation, the chiropractor stated that "[t]he sacral region at the sacro-iliac area had moderate myofascial pain and tenderness[, t]he cervical region at the mid-cervical area had moderate hypertonicity[, and t]he lumbar region[15] at the lower back area had moderate hypertonicity." *Id.* at 6. A February 12, 2014 MRI revealed degenerative changes in Petitioner's lumbar spine,[16] nerve impingement,[17] and disc protrusion.[18] Pet'r's Ex. 7 at 5, 7, ECF No. 12-3.

On March 31, 2014, Petitioner presented to neurosurgeon Dr. Stephen Smith. Pet'r's Ex. 2 at 72. Petitioner reported that he had sustained a pelvis fracture when he was eighteen, and Dr. Smith noted that Petitioner had had "difficulty with a right-sided sciatic[19] for a number of years." *Id.* Petitioner reported pain "in his left buttock, left hip, and down his left leg" that began in December 2013, three days after a gust of wind caught him while he was carrying a ladder. *Id.* Petitioner stated that this pain had worsened since then and that his chiropractic treatments "did not really seem to help on a consistent basis for the left side." *Id.* Dr. Smith observed that Petitioner struggled to stand up straight and could walk on his toes and heels with a cane. *Id.* Dr. Smith noted numbness in Petitioner's right toe, which Petitioner reported experiencing "for years." *Id.* at 73.

Petitioner presented to a physical therapist for an initial evaluation on August 14, 2014, for treatment of lumbar radiculopathy.[20] Pet'r's Ex. 11 at 5, ECF No. 19-2. Petitioner reported that he began having lower back problems after breaking his right hip at age nineteen. *Id.* at 8. Petitioner also stated that he suffered from debilitating pain "a couple of days" after carrying a fourteen-foot ladder and trying to stop it from rotating in November 2013. *Id.* Petitioner reported experiencing "a great deal of pain from his left knee down to his foot," with occasional pain in his right leg. *Id.* Petitioner attended physical therapy appointments through October 2014, but did not experience significant improvement in his symptoms. *Id.* at 16–80; Pet'r's Ex. 10 at 5, ECF No. 17-2.

---

by a chiropractor . . . and Petitioner's pain was attributed to an exacerbation of chronic back pain." Pet. ¶ 2.

[15] The lumbar region is "that part of each side of the back between the thorax and pelvis[.]" *Regio Lumbalis*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 18, 2021).

[16] The lumbar spine is "the part of the spine comprising the lumbar vertebrae[,]" which are "the five vertebrae between the thoracic vertebrae and the sacrum." *Lumbar Spine*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 18, 2021); *Vertebrae Lumbales*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 18, 2021).

[17] Impingement is "advancement of one thing out of its expected place to where it may collide with something else[.]" *Impingement*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 18, 2021).

[18] Disk herniation is "the protrusion of the nucleus pulposus or anulus fibrosus of an intervertebral disk, which may impinge on nerve roots[.]" *Disk Herniation*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 18, 2021).

[19] The sciatic nerve "leaves the pelvis through the greater sciatic foramen[.]" *Nervus Ischiadicus*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 18, 2021).

[20] Lumbar radiculopathy refers to "any disease of the lumbar nerve roots, such as from disk herniation or compression by a tumor or bony spur, with lower back pain and often paresthesias." *Lumbar Radiculopathy*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 18, 2021).

On November 10, 2014, Petitioner underwent an MRI of his lumbar spine. Pet'r's Ex. 10 at 23. Dr. Smith noted that the MRI revealed "a small disc protrusion to the left at 4-5[]" but did not believe surgery was appropriate. Pet'r's Ex. 3 at 4, ECF No. 9-4. Petitioner did not report pain on his right side. *Id.* Dr. Smith noted that Petitioner had difficulty standing and that "[Petitioner's] findings seem to be out of proportion to his radiographic imaging. I am not sure what his diagnosis represents." *Id.* Observing numbness in Petitioner's left calf, Dr. Smith stated that "[p]erhaps it is radiculitis.[21]" *Id.* Dr. Smith advised Petitioner to undergo an EMG. *Id.*

On January 8, 2015, Petitioner presented to Dr. Kristl, a neurologist, for an EMG/nerve conduction study ("EMG/NCS"). Pet'r's Ex. 8 at 2, ECF No. 12-4. The findings were "consistent with a primary demyelinative polyneuropathy[22] with chronic and subacute features." *Id.* The study further revealed results "consistent with an L5 radiculopathy.[23]" *Id.* During a January 23, 2015 follow-up, Dr. Kristl noted that Petitioner had paresthesia, with "spontaneous onset of left leg numbness, pain[,] and weakness about two months ago." Pet'r's Ex. 9 at 5, ECF No. 15-2. Petitioner reported worsening weakness in his left foot as well as some right-foot weakness. *Id.* Dr. Kristl diagnosed Petitioner with CIDP and ordered another EMG. *Id.* at 9. Petitioner underwent IVIG treatment under Dr. Kristl's direction from March to December of 2015. *See* Pet'r's Ex. 6 at 346, 350, 385, 398, 477, 560, ECF No. 12-2; *see also* Pet'r's Ex. 23 at 6–20, ECF No. 71-3.

On January 7, 2016, Petitioner presented to Crossroads Healing Arts clinic. Pet'r's Ex. 5 at 7, ECF No. 9-6. Petitioner reported that his December 2013 Tdap vaccination caused "his problems which are getting worse." *Id.* After running tests, the physician assessed Petitioner with spinal cord demyelination. *Id.* Petitioner continued IVIG treatment through 2016, 2017, and 2018. *See* Pet'r's Ex. 6; Pet'r's Ex. 8 at 28; Pet'r's Ex. 12 at 2; Pet'r's Ex. 17, ECF No. 67-1. On February 2, 2017, Petitioner followed up with Dr. Kristl and presented with paresthesia. Pet'r's Ex. 21 at 1, ECF No. 71-1. Dr. Kristl noted that Petitioner was "having a lot of pain in the feet, especially on the dorsum of the foot. He also has a lot of cramps." *Id.* During another follow-up with Dr. Kristl on November 2, 2017, Petitioner reported paresthesia, muscle stiffness, and "extreme muscle cramps in his calf, especially." *Id.* at 8. Dr. Kristl recommended plasmapheresis[24] and referred Petitioner to a nephrologist. *Id.* at 8, 12.

On November 22, 2017, Petitioner presented to Dr. Prabhakom Kitbhoka, a nephrologist, for "CIDP required PLEX[,]" or plasmapheresis, as well as hypertension. Pet'r's Ex. 18 at 1, ECF

---

[21] Radiculitis is "inflammation of the root of the spinal nerve, especially of that portion of the root that lies between the spinal cord and the intervertebral canal." *Radiculitis*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 18, 2021).

[22] Demyelinating polyneuropathy refers to "any of numerous neurologic conditions in which demyelination of multiple nerves is a primary symptom, such as . . . [CIDP]." *Demyelinating Polyneuropathy*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 18, 2021). Demyelination is "destruction, removal, or loss of the myelin sheath of a nerve or nerves." *Demyelination*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 18, 2021).

[23] Radiculopathy is "disease of the nerve roots, such as from inflammation or impingement by a tumor or a bony spur." *Radiculopathy*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 18, 2021).

[24] Plasmapheresis is "the removal of plasma from withdrawn blood, with retransfusion of the formed elements into the donor[.]" *Plasmapheresis*, DORLAND'S, https://www.dorlandsonline.com (last visited Nov. 18, 2021).

No. 67-2. Dr. Kitbhoka wrote that Petitioner "was diagnosed CIDP [sic] after he developed muscle weakness right after he received [Tdap] shot." *Id.* Dr. Kitbhoka indicated that they would "plan for plasmapheresis" for Petitioner's CIDP. *Id.* at 4. Petitioner followed up with Dr. Kitbhoka on December 22, 2017, after receiving plasmapheresis on four occasions that month. *Id.* at 6, 9. Dr. Kitbhoka noted that Petitioner would continue with PLEX and IVIG treatment. *See id.* at 9. Petitioner continued seeing Dr. Kristl for CIDP symptoms through at least 2019. *See* Pet'r's Ex. 23 at 51–57.[25]

### III.   Arguments regarding Petitioner's Motion for Attorneys' Fees and Costs

In his final motion for attorneys' fees and costs, Petitioner notes that I have already granted Petitioner's motion for interim attorneys' fees and costs and determined that Petitioner had met the good faith and reasonable basis requirements at the time he filed his petition. Pet'r's Mot. at 7. Petitioner asserts that "[n]othing has changed in this matter since the interim fee award was granted." *Id.* He states that "[w]hen the undersigned counsel took this matter, they reviewed the docket and records to determine whether the [p]etition was brought in good faith and with a reasonable basis. In making their determination, undersigned counsel relied on the Court's grant of interim attorney fees." *Id.* Petitioner notes that, when addressing Respondent's reasonable basis objection in my Interim Fees Decision, I stated that "[i]t is well settled that a medical expert's report is not a necessary condition to find reasonable basis for a filed claim." Interim Fees Decision at 8; Pet'r's Mot. at 7–8. Petitioner concludes that "[b]ased on the totality of circumstances, at the time the [p]etition was filed there was a reasonable basis for the claim." Pet'r's Mot. at 8.

In his response to Petitioner's motion, Respondent notes that "although there may have been a reasonable basis for filing a claim, it can cease to exist as the case progresses." Resp't's Resp. at 9 (citing *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994), *Frantz v. Sec'y of Health & Hum. Servs.*, 146 Fed. Cl. 137, 143–44 (2019), and *R.K. v. Sec'y of Health & Hum. Servs.*, 760 F. App'x 1010, 1012 (Fed. Cir. 2019)). Respondent argues that "[P]etitioner has failed to establish a reasonable basis for his claim existed during Mr. Richards's representation[.]" *Id.* at 5. Respondent asserts that "the filed medical records fail to place onset of Petitioner's CIDP at a timeframe that could be causally-associated with his December 2013 Tdap vaccination. Petitioner did not submit additional evidence, such as an expert report, to supplement his medical records." *Id.* at 11. Respondent clarifies, however, that he "is not asserting that every petitioner should be required to obtain an expert opinion prior to filing a petition in order to have a reasonable basis for their claim. However, the failure to do so could result in a lack of evidence needed to establish a reasonable basis." *Id.* at 8. He continues that "in cases, such as this one, where the medical records contain substantial factual uncertainty regarding a diagnosis or onset of a condition, and thus fail to establish a reasonable basis for the claim, an expert report addressing

---

[25] While I have reviewed all of the records filed in this case, I have addressed only the medical records I have deemed most relevant to this Decision. *Moriarty v. Sec'y of Health & Hum. Servs.*, 844 F.3d 1322, 1328 (Fed. Cir. 2016) ("We generally presume that a special master considered the relevant record evidence even though he does not explicitly reference such evidence in his decision.") (citation omitted); *see also Paterek v. Sec'y of Health & Hum. Servs.*, 527 F. App'x 875, 884 (Fed. Cir. 2013) ("Finding certain information not relevant does not lead to—and likely undermines—the conclusion that it was not considered.").

8

the factual predicate for [P]etitoner's alleged vaccine injury could provide additional evidence sufficient to support a reasonable basis for the claim." *Id.*

Respondent argues that "[w]hile the efforts Mr. Richards took, to try to find an expert able to address onset of [P]etitioner's CIDP and potential vaccine causation, may be considered appropriate and reasonable, . . . his actions alone cannot establish a reasonable basis for [P]etitioner's claim." *Id.* at 10. Respondent "maintains that the evidence in the record at the time Mr. Richards became counsel of record does not support a finding of reasonable basis. Nor was sufficient evidence submitted during his representation of [P]etitioner to create a reasonable basis." *Id.* Respondent explains that he does not find the evidence in the record sufficient to establish a reasonable basis because he "continues to maintain that the filed medical records place onset of [P]etitioner's CIDP approximately eleven months after his Tdap vaccination, a timeframe that far exceeds that which can be considered medically reasonable for a demyelinating condition." *Id.* In support of the proposition that eleven months is too long to be medically reasonable for a demyelinating condition, Respondent cites cases involving GBS. *Id.* at 10 n.6 (citing *Corder v. Sec'y of Health & Hum. Servs.*, No. 08-228V, 2011 WL 2469736 (Fed. Cl. Spec. Mstr. May 31, 2011); *Thompkins v. Sec'y of Health & Hum. Servs.*, No. 10-261V, 2013 WL 3498652 (Fed. Cl. Spec. Mstr. June 21, 2013)). Respondent notes that on January 23, 2015, Petitioner reported "spontaneous onset of left leg numbness, pain and weakness about two months ago." *Id.* at 10 (quoting Pet'r's Ex. 9 at 5). Respondent further states that Petitioner did not associate the back and neck pain he experienced closer in time to his vaccination with said vaccination and that that pain was attributed to a lumbar radiculopathy. *Id.*

In his reply, Petitioner states that "[a]s prior counsel noted, [Petitioner's medical records] were supportive of Petitioner's statements related to his vaccination and injury because onset could be as early as February 2014 when Petitioner complained of exacerbated pain and deficits following his vaccine." Pet'r's Reply at 1. Petitioner asserts that "Respondent recycles the identical arguments that were previously rejected by this Court in deciding interim fees." *Id.* at 4. Petitioner continues, arguing that "[n]othing changed in the medical records following the retention of undersigned counsel." *Id.* at 6. Regarding the medical records filed during Mr. Richards's representation, Petitioner claims that "[e]ach of these records indicated the possibility of CIDP related to Petitioner's vaccine." *Id.* He further notes that Respondent has not asserted a change in the substance of the medical records. *Id.* at 8.

Petitioner also asserts that, during the period of Mr. Richards's representation, Mr. Richards "communicated with Dr. Kevin Kristl, who initially indicated he would be willing to provide an expert report to support Petitioner's claims." *Id.* Petitioner also notes that I repeatedly ordered Petitioner to file a motion to substitute counsel. *Id.* Petitioner continues that "Respondent seeks to impose upon undersigned counsel the obligation to obtain an expert opinion prior to his undertaking representation of Petitioner, which was expressly rejected by this Court." *Id.* at 7. He states that I "moved this matter to expert discovery[]" before Mr. Richards's representation began. *Id.* Petitioner further argues that "[r]equiring an expert medical opinion prior to the filing of a vaccine petition" would "set an untenable precedent." *See id.* Petitioner also contends that his decision to dismiss this case after concluding that he could not obtain an expert report supports his claim's reasonable basis. *See id.* at 8–9. Furthermore, Petitioner argues that the cases Respondent cites in support of the proposition that reasonable basis may dissipate, in fact, support Petitioner's

9

request for fees and costs in this case. *See id.* at 9–10. He avers that Program precedent "is clear" that "the cessation of a reasonable basis occurs when an expert or the Court opines that the claim is unsupported. Such is the case in the present matter." *Id.* at 11. Petitioner continues that when "an expert declined to support [ P]etitioner's claims[,] . . . undersigned counsel did exactly what the Vaccine Act and vaccine rules encourage and moved for a dismissal decision. Thus, counsel recognized that Petitioner had a reasonable basis for his claim until he no longer did." *Id.* at 11.

### IV.     Standards of Review

An analysis of reasonable basis requires more than just a petitioner's belief in her claim. *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *6–7 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. Sec'y of Health & Hum. Servs.,* 116 Fed. Cl. 276, 283 (2014). The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1346 (Fed. Cir. 2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert and clarifying that "the failure to consider objective evidence presented in support of a reasonable basis for a claim would constitute an abuse of discretion."). Indeed, determining what constitutes "more than a mere scintilla" is a "daunting task." *Cottingham v. Sec'y of Health & Hum. Servs.*, No. 15-1291V, 2021 WL 3085502, at *13 (Fed. Cl. July 21, 2021).

While the Federal Circuit in *Cottingham* did not purport to identify all forms of objective evidence reflective of reasonable basis, it stated that "objective medical evidence, including medical records . . . even where the records provide only circumstantial evidence of causation" can support a showing of reasonable basis. *Cottingham,* 971 F.3d at 1346 (citing *Harding v. Sec'y of Health & Hum. Servs.,* 146 Fed. Cl. 381, 403 (2019)). The *Cottingham* Court also reiterated that the reasonable basis determination is still based on a "totality of the circumstances." *Cottingham,* 971 F.3d at 1346. In another recent opinion regarding reasonable basis, the Federal Circuit stated that medical records, affidavits, and sworn testimony all constitute objective evidence to support reasonable basis. *James-Cornelius v. Sec'y of Health & Hum. Servs.,* 984 F.3d 1374, 1379–81 (Fed. Cir. 2021). The Federal Circuit further clarified that "absence of an express medical opinion on causation is not necessarily dispositive of whether a claim has reasonable basis." *Id.* at 1379 (citing *Cottingham*, 971 F.3d at 1346). Furthermore, the Court of Federal Claims has stated that *James-Cornelius* provided a "clear articulation of the legal standard that a medical or expert opinion is not required to establish reasonable basis." *Cottingham*, 2021 WL 3085502, at *6 (maintaining that the presence of "additional facts supporting causation in *James-Cornelius*[] . . . do[es] not negate" the Federal Circuit's articulation of said legal standard).

When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Hum. Servs.,* 138 Fed. Cl. 282, 289 (2018).

10

The factors to be considered, however, do not include "counsel's conduct and state of mind." *James-Cornelius*, 984 F.3d at 1381 (citing *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017) and *Cottingham*, 971 F.3d at 1342). This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

Additionally, there may be reasonable basis at the time that a claim is filed, which then dissipates as the claim proceeds. *R.K. v. Sec'y of Health & Hum. Servs.*, 760 F. App'x 1010, 1012 (Fed. Cir. 2019) (citing *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1376–77 (Fed. Cir. 1994) (holding that "an award of fees and costs was not authorized for work performed on a case after a claim lost its reasonable basis[]"). If reasonable basis is lost, "Petitioners' counsels have an obligation to voluntarily dismiss a Vaccine Act claim once counsel knows or should know a claim cannot be proven." *Cottingham v. Sec'y of Health & Hum. Servs.*, 134 Fed. Cl. 567, 574 (2017) (citing *Perreira*, 33 F.3d at 1376; *Curran v. Sec'y of Health & Hum. Servs.*, 130 Fed. Cl. 1, 6 (2017); *Allicock v. Sec'y of Health & Hum. Servs.*, 128 Fed. Cl. 724, 727 (2016)).

Because reasonable basis can dissipate, a special master may "revisit[] the reasonable basis inquiry if such reconsideration is warranted by changed circumstances during the proceedings." *Chuisano*, 116 Fed. Cl. at 288. However, the Court of Federal Claims "does not sanction the revisiting of a claim's reasonable basis for every case-related activity; nor does the court sanction the revisiting of a claim's reasonable basis at certain pre-set stages of a proceeding." *Id.* at 289. "Rather, the court interprets the statute to permit the reexamination of a claim's reasonable basis if a notable change in circumstance should arise . . . ." *Id.* (indicating that a "notable change in circumstance" would occur "when the original counsel was unable to find an expert to support causation, but substitute counsel continued with the litigation anyway[]").

### V.   Discussion

I determined that Petitioner's claim had reasonable basis in my Interim Fees Decision issued on August 21, 2018. On April 1, 2019, Mr. Richards substituted as Petitioner's attorney of record and continued this case until September 9, 2019, when Petitioner filed a motion to dismiss. *See* ECF Nos. 62, 72. Even though I previously determined that Petitioner's claim had a reasonable basis, Respondent states that he "maintains that the evidence in the record at the time Mr. Richards became counsel of record does not support a finding of reasonable basis. Nor was sufficient evidence submitted during his representation of [P]etitioner to create a reasonable basis." Resp't's Resp. at 10. Although Respondent, in "maintain[ing] that the evidence in the record [as of April 1, 2019] does not support a finding of reasonable basis[,]" seems to be requesting that I revisit my previous findings, I have already concluded that Petitioner's claim had reasonable basis when he filed his petition, and, by implication, throughout the representation of Petitioner's prior counsel. Although I will address my Interim Fees Decision, the central issue here is whether the claim's reasonable basis dissipated prior to or during Mr. Richards's representation. Specifically, I will address whether reasonable basis dissipated (1) between prior counsel's motion to withdraw and Mr. Richards's substitution and (2) between Mr. Richards's substitution and Petitioner's motion to dismiss. For the reasons discussed herein, I conclude that this claim retained reasonable basis throughout its duration.

11

**A. Interim Fees Decision**

Respondent does not explicitly ask me to overturn my previous finding. However, his emphasis on "the evidence in the record" at the time Mr. Richards's representation began as well as Respondent's failure to note any new evidence filed leading up to Mr. Richards's representation indicate that Respondent is, in fact, asking me to review my Interim Fees Decision. I issued the Interim Fees Decision on August 21, 2018. Twenty-three days later, on September 13, 2018, the parties filed a joint notice indicating they would not seek review of my Decision. Despite Respondent's determination to not seek review, he is now seemingly asking me to review my own Decision. I will not revise a previous Decision absent a remand order, a timely-filed motion for reconsideration, or significant new evidence. However, I will discuss why "the evidence in the record" when Mr. Richards entered this case provided the "more than a mere scintilla" of evidence required to support a finding of reasonable basis in the interest of addressing objections raised by the parties. *See Cottingham,* 971 F.3d at 1346.

In my Interim Fees Decision, I determined that this claim had reasonable basis, first, because "[i]t is well settled that a medical expert's report is not a necessary condition to find reasonable basis for a filed claim." Interim Fees Decision at 8. In his response to Petitioner's present motion, Respondent seeks to clarify that his position is that expert reports are not necessary to establish reasonable basis in all cases but that they may "in cases . . . where the medical records contain substantial factual uncertainty regarding a diagnosis or onset of condition[,] and thus fail to establish a reasonable basis for the claim . . . provide additional evidence sufficient to support reasonable basis. . . . " Resp't's Resp. at 8. However, the Federal Circuit and the Court of Federal Claims have made it clear that an expert report is not required to establish a reasonable basis. Although the Federal Circuit in *James-Cornelius* stated that "absence of an express medical opinion on causation is *not necessarily* dispositive of whether a claim has reasonable basis[,]" *James-Cornelius*, 984 F.3d at 1379 (emphasis added), the Court of Federal Claims indicated that the Federal Circuit "clear[ly] articulat[ed the] legal standard that a medical or expert opinion is not required to establish reasonable basis." *Cottingham,* 2021 WL 3085502, at *6. Thus, I will not conclude that Petitioner needed to file an expert report in order to support a finding of reasonable basis.

I also concluded that this claim had reasonable basis because, in light of Petitioner's symptoms in the months between his vaccination and CIDP diagnosis, the timing of Petitioner's CIDP onset was unclear. Interim Fees Decision at 8. Respondent cites cases centering on GBS to support that an onset of CIDP eleven months after vaccination is too long to be plausible. Indeed, GBS and CIDP are closely related demyelinating conditions. However, Respondent fails to account for the fact that GBS is generally acute while CIDP, as its name suggests, is chronic. In fact, expert testimony in a previous case centered on the onset of CIDP indicated that "CIDP is a very insidious[,] gradually increasing condition." *Glassberg v. Sec'y of Health & Hum. Servs.*, No. 07-303V, 2009 WL 4641696, at *3 (Fed. Cl. Spec. Mstr. Nov. 23, 2009) (recounting the testimony of Dr. Kinsbourne).[26] Thus, the nature of CIDP may make it difficult in some cases to determine

---

[26] Special masters may draw on their prior experience resolving Program claims as well as prior Program cases. *Patel v. Sec'y of Health & Hum. Servs.*, No. 16-848V, 2020 WL 2954950, at *17 (Fed. Cl. Spec. Mstr. May 1, 2020) (citing *Doe v. Sec'y of Health & Hum. Servs.*, 76 Fed. Cl. 328, 338–39 (2007)). Special masters "would be remiss in ignoring prior cases presenting similar theories or factual circumstances, along with the reasoning employed in reaching such decisions. This is especially so given

12

onset. This is further complicated in a case like this one, in which a petitioner had additional medical conditions which may include symptoms that overlap with CIDP. Even though Petitioner reported "spontaneous onset of left leg numbness, pain[,] and weakness[,]" Pet'r's Ex. 9 at 5, this does not mean, in light of the record as a whole, that the onset of those symptoms was also the onset of Petitioner's CIDP. Determining the precise onset of Petitioner's CIDP in consideration of his medical history and symptoms would be a job for an expert. *See Patel*, 2020 WL 2954950 (relying on expert reports and medical literature to determine whether the petitioner's headaches were manifestations of CIDP and, thus, whether the petitioner's CIDP commenced within a medically acceptable timeframe). However, as Program precedent dictates, an expert report is not required to establish reasonable basis.

Furthermore, "it has long been understood that the *success* of a claim is not determinative of the claim's reasonable basis, an inquiry which considers whether objective proof exists to support it." *Halm v. Sec'y of Health & Hum. Servs.*, 2017 WL 7513285, at *4 (Fed. Cl. Spec. Mstr. Dec. 19, 2017) (agreeing with Respondent that a "claim was not likely to overcome the onset issue[]" but holding that "the case had sufficient reasonable basis through its dismissal for a fees award[]") (emphasis in original).The record in this case contains medical records, which constitute objective evidence, that suggest that Petitioner's CIDP may have begun months before his diagnosis. Whether or not Petitioner ultimately would have been able to successfully establish that his earlier symptoms were manifestations of his CIDP, those records, along with Petitioner's statements in his petition that his CIDP symptoms began in February 2014, provide the "more than a mere scintilla" of evidence needed to establish reasonable basis. *See Cottingham,* 971 F.3d at 1346.

### B. Motions for Interim Fees and to Withdraw through Substitution of Counsel

I find that reasonable basis did not dissipate between Petitioner's motions to withdraw and for interim fees and his motion for substitution of counsel. During this period, I ordered Petitioner to file a motion to substitute counsel on various occasions. I also ordered Petitioner to file "additional filings to clarify the record[]" that he proposed when acting *pro se. See* ECF No. 51. On February 26, 2019, about one month before Mr. Richards entered this case, I ordered Petitioner to file a either a motion to substitute counsel or a statement of completion. ECF No. 57.

This claim retained reasonable basis during this period. Petitioner indicated in his November 16, 2018 status report that he had additional medical records to file. However, this does not detract from the claim's reasonable basis, as Program petitioners frequently file additional medical records before, and sometimes after, filing expert reports. Although attorney conduct is not relevant to a reasonable basis determination, *James-Cornelius*, 984 F.3d at 1381, a motion to withdraw as counsel could raise questions regarding whether a claim still has reasonable basis if, for instance, an attorney indicates she was unable to locate an expert willing to opine in a petitioner's favor. *See Chuisano*, 116 Fed. Cl. at 289 (indicating that reasonable basis may be reconsidered when a substitute counsel continues a case after the original counsel was unable to find an expert). In this case, Petitioner's motion to withdraw as counsel does not raise this possibility, as it was filed prior to my order for Petitioner to produce an expert report. Petitioner

---

that special masters not only routinely hear from the same experts in comparable cases, but are also repeatedly offered the *same* items of medical literature regarding certain common causation theories." *Id.* (emphasis in original).

cited "irreconcilable differences between the undersigned attorney and Petitioner[]" as the reasons for counsel's withdrawal, did not indicate what those "differences" were regarding, and did not state that he had begun attempting to locate an expert. *See* ECF No. 35 at 1–2. However, it is true that in his motion for attorneys' fees and costs, Petitioner states that "[p]rior to [Mr. Richards] taking on this matter, prior counsel and Petitioner were unable to obtain expert medical opinions." Pet'r's Mot. at 8. While this may indicate that reconsideration of this case's reasonable basis is appropriate, it does not destroy this claim's reasonable basis. It is unclear what steps prior counsel or Petitioner took to retain an expert, especially since prior counsel sought to withdraw twenty-two days after Respondent filed his Rule 4(c) report and before I ordered Petitioner to file an expert report. Prior counsel's billing records do not indicate that counsel was attempting to retain an expert. *See generally* Pet'r's Ex. 15, ECF No. 34-1. Further, there is insufficient evidence in the record to indicate that Petitioner, when acting *pro se*, was attempting to locate an expert.

### C. Substitution of Counsel through Motion to Dismiss

Mr. Richards entered this case on April 1, 2019. Between then and Petitioner's September 9, 2019 motion to dismiss, Petitioner filed additional medical records and indicated that he was working to obtain an expert report in support of his claim. As noted in the additional records Petitioner filed, Petitioner reported to a nephrologist on November 22, 2017, that he "was diagnosed with CIDP after he developed muscle weakness *right after* he received a [Tdap] shot." Pet'r's Ex. 18 at 1. In his reply, Petitioner stated that Dr. Kristl initially agreed to provide an expert report but then declined. Pet'r's Reply at 4; *see also* Pet'r's Mot. to Dismiss ¶¶ 29, 33. Petitioner indicated that he moved for dismissal after Drs. Kinsbourne and Kristl declined to provide reports between August 16, 2019 and August 26, 2019. Pet'r's Mot. to Dismiss ¶¶ 31–34. This timeline is consistent with Mr. Richards's billing records. *See* Pet'r's Mot., Tab A at 7–9, ECF No. 76.

I find that reasonable basis did not dissipate during this period. The additional records filed by Petitioner did not clarify that Petitioner's CIDP began outside of a medically acceptable timeframe. On the contrary, Petitioner's nephrology records provide additional support for the contention that Petitioner's CIDP began shortly after his vaccination and well before his diagnosis. Furthermore, Petitioner's contention that Dr. Kristl initially agreed to provide a report supports that this claim maintained reasonable basis until Dr. Kristl, as well as Dr. Kinsbourne, eventually declined. The information in the record indicates that Petitioner promptly moved to dismiss this case when he determined that he could not obtain an expert report and, therefore, that this case no longer had reasonable basis.

For these reasons, I find that this claim retained reasonable basis throughout its duration. Therefore, I find that Petitioner is entitled to reasonable attorneys' fees and costs.

### VI. Reasonable Attorneys' Fees and Costs

The Vaccine Act permits an award of reasonable attorneys' fees and costs. § 15(e). The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1348 (Fed. Cir. 2008). This is a two-step process. *Id.* First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* at 1347–48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Second, the court may

make an upward or downward departure from the initial calculation of the fee award based on specific findings. *Id.* at 1348.

It is "well within the special master's discretion" to determine the reasonableness of fees. *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521–22 (Fed. Cir. 1993); *see also Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991). ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs."). Applications for attorneys' fees must include contemporaneous and specific billing records that indicate the work performed and the number of hours spent on said work. *See Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 316–18 (2008). Such applications, however, should not include hours that are "excessive, redundant, or otherwise unnecessary." *Saxton*, 3 F.3d at 1521 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

Reasonable hourly rates are determined by looking at the "prevailing market rate" in the relevant community. *See Blum*, 465 U.S. at 895. The "prevailing market rate" is akin to the rate "in the community for similar serves by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 895 n.11. Petitioners bear the burden of providing adequate evidence to prove that the requested hourly rate is reasonable. *Id.*

### A. Hourly Rate

The decision in *McCulloch* provides a framework for consideration of appropriate ranges for attorneys' fees based upon the experience of the practicing attorney. *McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), *mot. for recons. denied*, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). The Office of Special Masters has since updated the *McCulloch* rates, and the Attorneys' Forum Hourly Rate Fee Schedules for 2015–2016, 2017, 2018, 2019, 2020, and 2021 can be accessed online.[27]

Petitioner requests the following hourly rates for the work of his counsel: for Mr. David C. Richards, $332.00 per hour for work performed in 2019 and $343.00 for work performed in 2020; for Mr. Jeffrey D. Enquist, $265.00 per hour for work performed in 2019 and $278.00 per hour for work performed in 2020; for Ms. Kirsten Jensen-Beutler, paralegal, $110.00 per hour for work performed in 2019 and $113.00 per hour for work performed in 2020. *See* Pet'r's Mot., Tab C at 2–3, ECF No. 76. The rates requested for Mr. Richards and Ms. Jensen-Beutler are consistent with what Mr. Richards and his firm's paralegals have previously been awarded for their Vaccine Program work, and I therefore find them reasonable. *See*, *L.M. v. Sec'y of Health & Hum. Servs.*, No. 14-714V, 2020 WL 6746965, at *2 (Fed. Cl. Spec. Mstr. Oct. 29, 2020); *Smith v. Sec'y of Health & Hum. Servs.*, No. 17-302V, 2019 WL 7557790, at *3 (Fed. Cl. Spec. Mstr. Dec. 20, 2019). Although a rate has not been clearly established for Mr. Enquist's Vaccine Program work, I find his requested rates reasonable in light of his experience. *See* Pet'r's Mot., Tab C at 3–4; *see also McCulloch*, 2015 WL 5634323, at *19.

### B. Reasonable Number of Hours

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are

---

[27] The OSM Fee Schedules are available at: http://www.cofc.uscourts.gov/node/2914.

15

"excessive, redundant, or otherwise unnecessary." *Saxton*, 3 F.3d at 1521 (quoting *Hensley*, 461 U.S. at 434).

Upon review of the submitted billing records, I find that the time billed largely reasonable. The invoice entries are sufficiently detailed for an assessment to be made of the entries' reasonableness. However, a small reduction is necessary due to excessive time billed on some tasks. For instance, counsel occasionally billed for receiving electronic notifications from the Court, including one notification for .3 hours. *See* Pet'r's Mot., Tab A at 3, 4, 6, ECF No. 76. Counsel also billed 4.4 hours for drafting a very brief and standard affidavit on Petitioner's behalf and corresponding with Petitioner about needed notarization. *Id.* at 10. Upon review, a reasonable reduction for these issues is $400.00. Petitioner is therefore awarded final attorneys' fees of $19,842.50.

### C. Attorney Costs

Like attorneys' fees, a request for reimbursement of attorneys' costs must be reasonable. *Perreira v. Sec'y of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). Petitioner requests a total of $2,534.05 in attorneys' costs, comprised of printing and copying fees, research fees, and expert review. *See* Pet'r's Mot., Tab A at 11. Petitioner has provided adequate documentation for the outside printing and expert review expenses, and they appear reasonable for the work performed in this case. Petitioner has not provided documentation regarding his research expenses, but those expenses, which total $76.99, appear reasonable considering the work performed in this case. Petitioner has not provided documentation for "in house photocopies" but has billed for such copies at $0.20 per page, a rate generally considered reasonable in the Program. *See, e.g.*, *Tipton v. Sec'y of Health & Hum. Servs.*, No. 16-303V, 2017 WL 7791110, at *5 (Fed. Cl. Spec. Mstr. Oct. 23, 2017); Pet'r's Mot., Tab A at 11. Petitioner is therefore awarded the full amount of costs sought.

## VII. Conclusion

Petitioner's motion is hereby **GRANTED**. In accordance with the Vaccine Act, 42 U.S.C. § 300aa-15(e), the undersigned has reviewed the billing records and costs in this case and finds that Petitioner's request for fees and costs, other than the reductions delineated above, is reasonable. Based on the above analysis, the undersigned finds that it is reasonable to compensate Petitioner and his counsel as follows:

| | |
|---|---|
| Attorneys' Fees Requested | $20,242.50 |
| (Reduction to Fees) | - ($400.00) |
| **Total Attorneys' Fees Awarded** | **$19,842.50** |
| | |
| Attorneys' Costs Requested | $2,534.05 |
| (Reduction of Costs) | - ($0.00) |
| **Total Attorneys' Costs Awarded** | **$2,534.05** |
| | |
| **Total Attorneys' Fees and Costs** | **$22,376.55** |

Accordingly, the undersigned awards a lump sum in the amount of **$22,376.55**, representing reimbursement for Petitioner's attorneys' fees and costs, in the form of a check payable to Petitioner and his attorney, Mr. David C. Richards.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court shall enter judgment in accordance herewith.[28]

**IT IS SO ORDERED.**

s/Herbrina D. Sanders
Herbrina D. Sanders
Special Master

---

[28] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. Vaccine Rule 11(a).